**UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MAINE**

| | |
|---|---|
| GEORGE LODER, <br><br> Plaintiff <br><br> v. <br><br> MAINE INTELLIGENCE ANALYSIS CENTER, et al. <br><br> Defendants. | CIVIL ACTION NO.: 2:20-cv-00157-JDL |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS COUNTS 3, 4, 5, and 6**

Defendants submit this Reply in support of their Motion to Dismiss Counts 3, 4, 5, and 6 of Plaintiff's Complaint.

**I.     Privacy Act Violations Cannot Be Rectified By § 1983 Actions (Count 3)**

Citing *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980), Loder seems to argue that he maintains a path to relief pursuant to Count 3 for his grievances against Defendants Ireland and Johnston pursuant to 42 U.S.C. § 1983. *Thiboutot* acknowledged that § 1983 does not only apply to constitutional or civil rights violations, but that it can be used to remedy violations of certain federal statutory rights as well. *Id.* However, Loder's sole citation to *Thiboutot* elides the point of Defendants' Motion to Dismiss Count 3.

Loder fails to engage with Defendants' argument that the Privacy Act contains a "comprehensive enforcement scheme" for rectifying violations of that statute, that in turn bars recovery under § 1983. *See* Mot. to Dismiss at 12-13 (ECF No. 10). Not only is the comprehensive remedial scheme self-evident from the text of the Privacy Act, *see* 5 U.S.C. § 552a(g), it has also

been recognized by two United States Courts of Appeals. *See id.* at 13. Because the text and structure of the Privacy Act forecloses recovery under § 1983, Count 3 should be dismissed.

Likewise, Loder has failed to respond to Defendants' argument that they enjoy qualified immunity regarding the allegations proffered in Count 3. *See* Mot. to Dismiss at 14. When defendants offer arguments in a motion to dismiss and the plaintiff chooses not to address those arguments, any opposition is subject to waiver. *See Rivera-Huertas v. Commonwealth*, 212 Fed. App'x 1, 3 (1st Cir. 2006) (citing *Rocafort v. IBM Corp.*, 334 F.3d 115, 121-22 (1st Cir. 2003)); *Mansir v. United States*, 299 F. Supp. 3d 203, 214 (D. Me. 2018) ("[Plaintiff] has neither objected nor responded to these arguments in his opposition brief. 'Failure to respond to a motion to dismiss means that opposition to the motion is waived . . . and the motion may be granted for that reason alone[.]'" (quoting *Andrews v. Am. Red Cross*, 251 F. Supp. 2d 976, 979 (D. Me. 2003)). This provides the Court wholly separate grounds for dismissal of Count 3.

Nor does Loder address Defendants' argument that they are not on notice of how their actions violated the Privacy Act. *See* Mot. to Dismiss at 10-12. Any opposition to these arguments is similarly waived. *Id.* Finally, for the same reasons detailed below regarding Count 4, Count 3 should be dismissed because the Privacy Act—as a matter of law—does not apply to state officials.

## II.   The Privacy Act Does Not Apply to the MIAC or the State Police (Count 4)

Loder does not refute Defendants' argument that the Privacy Act applies only to federal agencies and employees. Mot. to Dismiss at 6-7. Rather, he maintains that the MIAC "is subject to 'extensive, detailed and virtually day-to-day supervision' by the federal government . . . and therefore 'agency' status could be said to attach . . . ." Opp. at 4 (ECF No. 14).

But the only allegation in the Complaint regarding the MIAC's relationship to the federal government is that it is the National Instant Criminal Background Check System's "Point of Contact" for the FBI and that therefore the MIAC is "contracting with and/or working on behalf

of the [FBI]." Compl. ¶¶ 8-9, 142, 148. Loder tries to buttress this assertion by appending to his Opposition a document titled "PROTOCALL FOR FBI NICS CALLS" [*sic*]. Opp. Ex. C. Even if Exhibit C supported Loder's argument—which it does not—the Court should not consider it.

On a motion to dismiss, courts ordinarily will not consider any documents not attached to or expressly incorporated into the complaint. *Ironshore Specialty Ins. Co. v. United States*, 871 F.3d 131, 135 (1st Cir. 2017). However, "courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Exhibit C falls into none of these categories.

Loder argues that Exhibit C "is an admission by Defendants and central to Plaintiff's claims." Opp. at 1. But Exhibit C is not an "admission" by Defendants. Rather, it is being introduced by Loder for the first time in his Opposition. "[U]nder First Circuit precedent, when 'a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged),' then the court can review it upon a motion to dismiss." *Id.* (quoting *Diva's Inc. v. City of Bangor*, 411 F.3d 30, 38 (1st Cir. 2005)). But the allegations in the Complaint are not linked to—or dependent upon—Exhibit C. Nor is the authenticity of Exhibit C unchallenged. It should be set aside.[1]

Loder argues that the facts in this case are unlike the facts in *St. Michael's Convalescent Hosp. v. State of Cal.*, 643 F.2d 1369 (9th Cir. 1981) and, presumably, *Forsham v. Harris*, 445 U.S. 169 (1980). But any factual differences only support Defendants' argument. The alleged

---

[1] Even if Exhibit C is considered, it still fails as a matter of law to offer any evidence the FBI exerts the type of federal control over the MIAC to establish Plaintiff's agency theory. Although its source is unclear, Exhibit C seems to outline some protocols for how the MIAC performs background checks as the FBI's "Point of Contact" for Maine. Taken as true, Exhibit C would seem to substantiate—but add no relevant details to—Plaintiff's allegations in paragraphs 8 and 9 of the Complaint, which Defendants had already accepted as true for purposes of their Motion to Dismiss.

3

extent of federal government control over the defendants in *St. Michael's* and *Forsham* was <u>far greater</u> than that alleged by Loder, yet those courts found lacking the requisite federal control that could have swept those defendants into the definition of "federal agency" under the Privacy Act.

In *St. Michael's*, state agencies were tasked with carrying out provisions of California's Medicaid program, which the Ninth Circuit described as "a state-administered program which receives federal financial support and which is also <u>highly regulated by the federal government</u>." 643 F.2d at 1374 (emphasis added). Despite obligations to follow "extensive federal regulations," the court noted that "those regulations do not convert acts of local and state governmental bodies into federal governmental acts." *Id* at 1373-74. In *Forsham*, the Supreme Court noted that the private doctors' organization at issue received funds pursuant to a federal statute and that a federal agency had "exercised a certain amount of supervision over the funded activity," including requiring periodic reports, on-site visits, and approval for budgetary changes. 445 U.S. at 172-73. But as the court held, "[g]rants of federal funds generally do not create a partnership or joint venture with the recipient, nor do they serve to convert the acts of the recipient from private acts to governmental acts absent extensive, detailed, and virtually day-to-day supervision." *Id.* at 180.

Defendants are not aware of a single case where a court has found a state agency to constitute a "federal agency" for purposes of the Privacy Act. As a matter of law, the MIAC's mere existence as the "Point of Contact" for the FBI's background check program as alleged in the Complaint falls far short of what would be required to state a claim under the Privacy Act.

As with Count 3, Loder's Opposition to the dismissal of Count 4 neglects to address Defendants' protestation that they have not been placed on notice of the nature of their alleged Privacy Act violations. *See* Mot. to Dismiss at 10-12. Loder's failure to address this in his

4

Opposition constitutes waiver and provides the Court an independent basis for dismissing Count 4. *See Rivera-Huertas*, 212 Fed. App'x at 3; *Mansir*, 299 F. Supp. 3d at 214.

### III.   Loder Cannot Maintain His Due Process Claims (Count 5)

Loder attempts to introduce a collective bargaining agreement to the analysis of Defendants' motion, but the agreement does not fall into any of the narrow exceptions under *Ironshore/Watterson*. Although Loder cites to ¶ 30 of the Complaint, it does not refer to a collective bargaining agreement or membership in a union. In his Opposition, Loder includes a hyperlink to an agreement, but that link refers to a contract in effect from 2019-2021, dates that do not encompass any of the Complaint's allegations. In any event, the agreement does not help Loder because it says nothing to support his theory that he had a constitutionally protected property right in his temporary JTTF assignment or in any specific job duties. To the contrary, Article 23 says that management has the right to direct its work force. While Loder refers to disciplinary actions, he does not cite any provision that states that changing his work assignment or job duties constitutes a "disciplinary action" that would trigger due process.

Regarding his job duties, Loder submits "Exhibit A" that refers to a position posted in December 2011. Again, Exhibit A does not fall under any of the *Ironshore/Watterson* exceptions,[2] but even if it did, it would not matter. Having accepted the Complaint's allegations as true for purposes of this motion, the Complaint nonetheless fails to allege that there is any state law, regulation, or applicable bargaining agreement provision that bars changing Loder's duties without

---

[2] Loder alleges that in December 2011, he applied but was not selected for a detective's position assigned to the FBI's JTTF. Compl. ¶ 27. Exhibit A refers to a position fitting this description that was posted in December 2011. Loder alleges he was not given this position; instead, he was given a different field agent position in February 2012, and he alleges he was not assigned to the JTTF until 2013. *Id.* ¶¶ 29-30, 32. Where the document Loder submitted as Exhibit A is dated December 20, 2011, it does not match up to the "job posting" described in ¶ 30.

a hearing. Absent a specific law or contract term to the contrary, an employee does not have a constitutionally protected right in his job duties. *See* Mot. to Dismiss at 15-18.

In his Opposition, Loder seems to argue that he was either removed or constructively discharged from his position as a Maine State Police detective, but the Complaint contains no factual allegations to support this argument. Rather, the Complaint alleges that the MIAC does not conduct criminal investigations, but instead receives, analyzes and shares information between agencies; Loder was hired as a field agent with the MIAC in early 2012; a year later, in early 2013, he began a temporary duty assignment to work with the JTTF based in Portland, during which he remained in his position supervised by the Maine State Police personnel in the MIAC; and in 2018, he was called back from the JTTF assignment and instructed to resume duties of analyzing data at the MIAC's location in Augusta. Compl. ¶¶ 29-35, 39-43, 77, 96, 98-99. He also alleges that he was not treated like "other detectives" at the Maine State Police when he sought a "lateral transfer" from his position in the MIAC to a detective position in Major Crimes. Compl. ¶¶ 101-104. Loder does not allege that his position as a full-time detective with the Maine State Police, his supervision by MIAC personnel, his salary, or his benefits were changed when he was called back from his temporary JTTF assignment. Compl. ¶¶ 6, 10-11, 25, 29-33, 54-55, 77, 96, 98-99.

In all, there is only one reference in the Complaint to a change to a different position, where Loder alleges that he "took a demotion as a State Trooper after being denied any other positions except the desk job at the MIAC to oversee its database." Compl. ¶ 120. The only reasonable inference from this statement is that Loder voluntarily demoted to a State Trooper position because he did not want to remain in his detective position at the MIAC, not because he was removed from

it. The Complaint does not come close to alleging facts that would support an inference that he was either removed or constructively discharged from a State Police detective position.[3]

Finally, Loder fails to respond to Defendants' argument that they are entitled to qualified immunity with respect to Count 5. *See* Mot. to Dismiss at 18-19. As discussed earlier, Loder has thus waived his Opposition to granting the motion to dismiss Count 5 on this basis.

### IV.    Count 6 Fails to Articulate a Viable Cause of Action

Loder does not address Defendants' argument that 25 M.R.S.A. § 2014 does not provide a private cause of action. *See* Mot. to Dismiss at 19. Instead, he argues that section 2011 "enhances his rights" during a civil state of emergency and now appears to rely on Maine's COVID-19 emergency declared in early 2020 (not mentioned in the Complaint). But Loder does not allege that he has been required to register a firearm or ammunition at any time, let alone in 2020. He merely alleges that the FBI exchanges information with the MIAC to perform background checks, but does not assert that the MIAC learns about whether any proposed firearm transfer takes place. Compl. ¶¶ 65-74. If Loder is arguing that the MIAC's alleged retention of information provided by the FBI through the background check process is equivalent to requiring Loder to register a firearm he owns during the pandemic, such a reading of section 2011 is untenable. Thus, Count 6 fails to articulate any independent cause of action supported by allegations in the Complaint.

### CONCLUSION

Defendants respectfully request that the Court dismiss Counts 3, 4, 5, and 6 of the Complaint because there is no plausible path for relief for any of these claims.

---

[3] Loder also refers in his Opposition to ¶ 104 of the Complaint, which alleges that he was denied a lateral transfer to a detective position in Major Crimes. Compl. ¶¶ 102-104. Loder does not explain how this allegation has any bearing on his claim that he was denied due process when he was removed from the JTTF assignment. Count 5 refers only to a claimed property right "in his job as a member of the JTTF" and claims he was deprived of that right without due process. *Id.* ¶¶ 150-151. Furthermore, Loder's passing reference to "civil service laws, personnel rules, the CBA and past practice" does not adequately allege that a provision exists, or identify such a provision, that would limit the State Police's discretion to grant or deny his alleged request for an internal lateral transfer. *See* Mot. to Dismiss at 15-16.

Dated: October 30, 2020　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　AARON M. FREY
　　　　　　　　　　　　　　　　　　　　Attorney General


　　　　　　　　　　　　　　　　　　　　/s/ Paul E. Suitter
　　　　　　　　　　　　　　　　　　　　Paul E. Suitter
　　　　　　　　　　　　　　　　　　　　Assistant Attorney General
　　　　　　　　　　　　　　　　　　　　paul.suitter@maine.gov
　　　　　　　　　　　　　　　　　　　　Valerie A. Wright
　　　　　　　　　　　　　　　　　　　　Assistant Attorney General
　　　　　　　　　　　　　　　　　　　　valerie.a.wright@maine.gov
　　　　　　　　　　　　　　　　　　　　Six State House Station
　　　　　　　　　　　　　　　　　　　　Augusta, Maine 04333-0006
　　　　　　　　　　　　　　　　　　　　Tel. (207) 626-8800
　　　　　　　　　　　　　　　　　　　　Fax (207) 287-3145

## **CERTIFICATE OF SERVICE**

I hereby certify that on this, the 30th day of October, 2020, I electronically filed the above document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Cynthia A. Dill
dillesquire@gmail.com

             /s/ Paul E. Suitter
             Paul E. Suitter
             Assistant Attorney General
             Six State House Station
             Augusta, Maine  04333-0006
             Tel. (207) 626-8800